**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Jaspreet S.,

Petitioner,

v.

Todd Blanche, et al.,

Respondents.

**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**

Civil File No. 26-3307 (MJD/LIB)

---

Daniel P. Suitor, Daniel P. Suitor, PLLC, Counsel for Petitioner.

Derek Ganzhorn, Assistant United States Attorney, Counsel for Respondents.

---

This matter is before the Court on Petitioner Jaspreet S.'s Petition for Writ of Habeas Corpus. ("Pet.") Petitioner claims he is currently unlawfully detained in violation of the Fifth Amendment Due Process Clause, the Fourth Amendment, and the Accardi Doctrine. Respondents maintain that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2).

## I. FACTS[1]

Petitioner is a 22-year-old citizen of India and resident of Milwaukee, Wisconsin. On or about May 13, 2024, Petitioner entered the United States in

[1] Facts not disputed are deemed admitted. See Paula G. v. Bondi, No. 26-CV-410 (JMB/DLM), 2026 WL 146003, at *1 n.2 (D. Minn. Jan. 20, 2026).

Southern California, was detained by border patrol agents on May 14, 2024, and was issued a Notice to Appear ("NTA") for an immigration hearing. The same day, Petitioner was released on conditional parole, pursuant to 8 U.S.C. § 1226(a). (Doc. 7-2 (Form I-220A (Order of Release on Recognizance) stating that Petitioner was being released pursuant to "section 236 of the Immigration and Nationality Act").) Section 236 is codified at 8 U.S.C. § 1226.

On August 12, 2024, Petitioner filed applications for asylum, asylum withholding, and withholding of removal under the Convention Against Torture ("CAT"). (Pet. ¶ 17.) He supplemented his applications on May 12, 2026. (Id.) Petitioner states that in India, he was repeatedly assaulted because of his political activities and Sikh identity by members of an opposing political party. (Doc. 2-2 (App. Asylum & Withholding of Removal & Suppl.) at 5-7, 13-15.) Petitioner asserts, "If I were to return to India, I firmly believe I would face serious harm, mistreatment, and possibly death at the hands of BJP-affiliated individuals and their supporters. The pattern of violence I experienced was not isolated - it was repeated, escalating, and deliberately targeted at me because of my political beliefs and religious identity as a Sikh." (Id. at 5.) These applications remain pending. (Pet. ¶ 17.)

On July 28, 2025, Petitioner was arrested in Baldwin, Wisconsin for felony theft by misrepresentation, impersonating a peace officer to aid in the commission of a crime, and money laundering. (Id. ¶ 18 (citing Complaint, Wisconsin v. Singh, No. 2025CF000427 (Wis. Cir. Ct. July 30, 2025)).) These charges remain pending. On April 27, 2026, he was released from the St. Croix County Jail on bond. (Id. ¶ 19.) Petitioner was immediately detained by ICE officers. (Id.)

Petitioner claims that he was not served a warrant when he was arrested, but was served an I-200 administrative warrant when he arrived at the ICE field office, and therefore his arrest was warrantless. (Id.) Respondents, on the other hand, state that they issued a detainer for Petitioner when he was in the St. Croix County Jail and that he was served with the warrant "upon release." (Doc. 6 at 2.) The detainer is dated July 30, 2025 and the I-200 administrative warrant is dated April 9, 2026. (Docs. 7-1, 7-3.) The certificate of service for the I-200 states that it was served on Petitioner at Hudson, WI, which is where the St. Croix County Jail is located.

On June 22, 2026, Petitioner filed a motion for a bond hearing in his immigration case. (Pet. ¶ 22.) The next day, an immigration judge ("IJ") denied

Petitioner bond "because [p]ursuant to Avila v. Bondi the Court lacks jurisdiction over bond proceedings. See 170 F.4th 1128 (8th Cir. 2026)." (Doc. 2-3.) This is the entirety of the IJ's order. Petitioner is currently in ICE custody in the Sherburne County Jail. (Pet. ¶ 25.) He is not subject to a final order of removal.

On July 15, 2026, Petitioner filed the instant petition. The next day, the Court filed an Order to Show Cause ordering Respondents to respond to the petition, which they timely did. Petitioner filed a reply.

## II. DISCUSSION

Petitioner argues that his detention violates his Fifth Amendment procedural due process rights, his Fourth Amendment right against unlawful seizure, and the Accardi Doctrine.

### A. Jurisdiction

A writ of habeas corpus may be granted to a petitioner who demonstrates he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004). District courts have jurisdiction to hear habeas challenges to immigration-related detention. Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

> It is well established that certain constitutional protections available to persons inside the United States are unavailable to noncitizens

> outside of our geographic borders. But once a noncitizen enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent.

Id. at 693 (citations omitted). This "distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." Id. Petitioner must prove unlawful detention by a preponderance of the evidence. See Belsai D.S. v. Bondi, 810 F. Supp. 3d 1016, 1020 (D. Minn. 2025) (citations omitted).

**B. Petition Verification**

Respondents argue that the Court should dismiss Petitioner's petition because it lacks proper verification. (Doc. 6 at 2-3.) Respondents specifically argue that Petitioner's counsel, who personally swore to the accuracy of the habeas petition, failed to properly verify the petition because he gives "no explanation why Petitioner was unable to review and verify the Petition" when he knows where Petitioner is located. (Id. at 3.)

A petition for writ of habeas corpus must "be in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf." 28 U.S.C. 2242. The Court is persuaded by the reasoning in Vu V.L. v. Mullin:

> A person acting on behalf of a habeas petition might sign and verify the petition because of the petitioner's inaccessibility, mental incompetence, or other disability. . . . [O]ne early American court explained that it was a "frequent practice" to present habeas petitions in deportation cases signed and verified by others than the person detained because often for lack of time, . . . it [is] impossible to present a petition signed and verified by the person detained. That concern rings true nearly 120 years later. As courts in this District have observed over the last several months, ICE has been less than diligent in communicating with detainees and their counsel regarding a detainee's circumstances of detention and has transferred detainees frequently, quickly, without notice, and often with no way for attorneys to know where or for how long their clients will be at a given facility. These circumstances—notably, created by the Government—no doubt present the sort of "inaccessibility" and "lack of time" that justifies an attorney to act on a petitioner's behalf in signing and verifying a habeas petition.

Civil No. 26-2947 (LMP/JFD), Docket No. 8 (slip op.) at 6–7 (D. Minn. July 1, 2026) (citations omitted) (second set of ellipses in original). Petitioner's attorney invoked this quote when he verified that he submitted the Petition on behalf of Petitioner based on conversations with Petitioner and his personal knowledge. (Pet. at 27.) The Court considers the habeas petition properly verified.

### C. Effect of Avila v. Bondi on Petitioner's Claims

Respondents argue that Petitioner is subject to mandatory detention pursuant to § 1225(b)(2)(A), as confirmed by the Eighth Circuit in Avila, 170 F.4th 1128. (Doc. 6 at 7, 17.) While the Eighth Circuit's decision in Avila would preclude a statutory claim premised on § 1225, Avila does not foreclose

constitutional or statutory claims not raised in that case. The Court therefore turns to Petitioner's Due Process arguments.

**D. Fifth Amendment Due Process**

Petitioner applies the Mathews v. Eldridge balancing test to argue that his continued detention violates his constitutional due process rights guaranteed by the Fifth Amendment. (Pet. ¶¶ 68–75 (citing Mathews, 424 U.S. 319 (1976)).)

Respondents, however, contend that Petitioner is not challenging the procedures used to determine he is subject to the detention mandate of § 1225(b)(2)(A), but instead that Petitioner raises a substantive due process claim that challenges Congress's substantive decision to mandate detention pending removal proceedings, without regard to his flight risk or dangerousness. (Doc. 6 at 5.) This claim, Respondents assert, "does not take § 1225(b)(2)(A)'s substantive determinations as a given, but challenges the lawfulness of those determinations vis-à-vis the statute. In other words, it presumes an 'applicant for admission' who cannot prove he is 'clearly and beyond a doubt entitled to be admitted' has a constitutional liberty interest beyond that prescribed by statute. That is a substantive, not procedural, due process challenge." (Id.) Respondents further

argue that even if the Mathews factors are applied in this case, Petitioner is not entitled to a bond hearing on that basis. (Id. at 13.)

As discussed above, the parties dispute whether Petitioner was arrested pursuant to § 1225(b)(2) or § 1226(a). Even assuming, without deciding, that Petitioner is subject to § 1225(b)(2), he is still entitled to a bond hearing because he has been denied his Fifth Amendment due process rights.

**1. Petitioner's Fifth Amendment Protections**

Petitioner is entitled to due process of law under the Fifth Amendment. The Fifth Amendment provides, in pertinent part, that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The United States Supreme Court has made clear that the "Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693.

**2. Procedural vs. Substantive Due Process**

As discussed above, Respondents argue that Petitioner's entire due process claim should be classified as substantive, rather than procedural. However, Petitioner argues that mandatory detention without an individualized

particularized inquiry into the need for detention merely to continue Respondents' "en masse detentions of immigrants for the sake of detention" results in a high "risk of erroneous deprivation" of individual liberties. (Pet. ¶ 70.) This is a challenge to the procedures used to deprive Petitioner of his liberty. Thus, the Court agrees with Petitioner that "[w]ithout an individual assessment, the risk of erroneous deprivation is high." Pedro A.D.L.O.O. v. Bondi, Civil No. 26-1959 (DWF/DJF), 2026 WL 948970, at *3 (D. Minn. Apr. 8, 2026). Thus, Petitioner's procedural due process challenge is properly raised.

### 3. The Mathews v. Eldridge Balancing Test

Turning to the merits of Petitioner's procedural due process claim[2], to determine whether a detainee's due process rights have been violated, courts apply a three-part balancing test that weighs the following:

> [1] the private interest that will be affected by the official action; [2] the risk of an erroneous deprivation of such interest through the

---

[2] Respondents cite the Eighth Circuit's decision in Banyee v. Garland, 115 F.4th 928 (8th Cir. 2024) but do not argue that it precludes Petitioner's procedural due process argument outright other than arguing that because this is a substantive due process issue, there is no need to perform the Mathews balancing test. (Doc. 6 at 8, 11-12.) To the extent the Court misconstrues Respondents' argument, the Court has already found the Eighth Circuit's broad due process pronouncements in Banyee "cabined to the statutory and factual context in which they arose." See Orlando R.V.V. v. Blanche, Civ. No. 26-1903, Docket No. 11 (slip op.) at 10 (D. Minn. Apr. 28, 2026).

> procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [3] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews, 424 U.S. at 335. Although Respondents spill much ink arguing that Mathews v. Eldridge is not properly used as an individualized test, the Court finds the test appropriate for this use. See, e.g., Berman J.P.H. v. Margolin, Civil No. 26-2131 (JRT/EMB), Docket No. 12 (slip op.) at 4 (D. Minn. May 6, 2026); Jorge P.T. v. Blanche, Civil No. 26-3463 (NEB/ECW), Docket No. 17 (slip op.) at 3 (D. Minn. Aug. 11, 2026); Mark O. v. Blanche, Civil No. 26-2448 (MJD/EMB), Docket No. 7 (slip op.) at 12 (D. Minn. May 18, 2026).

**a. The First Mathews Factor**

Respondents claim that the first factor, Petitioner's private interest, "is insubstantial" because Petitioner does not allege any constitutionally cognizable rights as he has never been "admitted into the country pursuant to law." (Doc. 6 at 18 (citing DHS v. Thuraissigiam, 591 U.S. 103, 138 (2020)).) The Court disagrees that Thuraissigiam limits Petitioner's private interest. In Thuraissigiam, a noncitizen was detained for expedited removal pursuant to 8 U.S.C. § 1225 immediately after crossing the border. 591 U.S. at 114. The Court held that a noncitizen in his position is not entitled to a bond hearing because he

"has only those rights regarding admission that Congress has provided by statute." Id. at 140.

Thuraissigiam is easily distinguishable on the facts because the petitioner "was apprehended 25 yards from the border and was thereafter continuously detained." Manuel G. v. Blanche, No. 26-cv-2385, 2026 WL 1256358, at *4 (D. Minn. May 7, 2026). Moreover, Thuraissigiam "is inapplicable here because [Petitioner] does not challenge the reviewability of his removal but rather the lawfulness of his detention without an individualized hearing." Felipe S.P. v. Blanche, Civil No. 26-2212 (NEB/DJF), Docket No. 18 (slip op.) at 14 (D. Minn. July 2, 2026). The factual predicate for Thuraissigiam "merely reinforces [the] longstanding understanding that noncitizens on the threshold of initial entry stand on a different footing than those who have passed through our gates." Lopez-Campos v. Raycraft,175 F.4th 713, 733-34 (6th Cir. 2026) (citation omitted) (cleaned up). Because Petitioner has been living in the country for over two years, Thuraissigiam does not limit his private interest under the Mathews balancing test. Finally, to the extent Respondents rely on Demore v. Kim, 538 U.S. 510 (2003) to argue that Petitioner is not entitled to a bond hearing, "the better reading of Demore is that noncitizens are generally entitled to an

individualized finding of danger and risk of flight." Felipe S.P., Civil No. 26-2212, slip op. at 10.

Respondents admit as much. They quote Demore for the proposition that detention during deportation proceedings is "constitutionally valid" because "deportation proceedings would be vain if those accused could not be held in custody pending the inquiry into their true character." (Doc. 6 at 5 (quoting Demore, 538 U.S. at 523 (cleaned up)).) Here, there was no inquiry into Petitioner's character. His "bond hearing" was a performative summary denial of due process that had nothing whatsoever to do with Petitioner's character, his danger to the community, or his flight risk. See Mohammed H. v. Trump, 781 F. Supp. 3d 886, 895 (D. Minn. 2025) ("Executive detention must rest on more than categorical, unsubstantiated, or facially deficient grounds, particularly where the government has not demonstrated with evidence that the detainee poses a danger to the community, presents a flight risk, or is subject to removal based on any criminal or national security ground.").

The Court finds that the first factor weighs heavily in Petitioner's favor. The interest in being free from physical detention is the "most elemental of liberty interests." Hamdi, 542 U.S. at 529; Zadvydas, 533 U.S. at 690. Petitioner

was released on parole by ICE and released on bond by St. Croix County. Thus, two agencies at different levels of government have found that he need not be detained to protect the public or to insure his presence at future hearings. Petitioner is terrified to return to India and wants to stay in this country to pursue his pending applications for asylum, withholding of removal, and withholding of removal under CAT. Therefore, Petitioner has significant private interests affected by his ongoing detention. The first Mathews factor favors Petitioner.

**b. The Second Mathews Factor**

The second Mathews factor requires the Court to consider the risk of an erroneous deprivation of Petitioner's liberty as well as "the degree to which additional or substitute procedural safeguards could ameliorate the risks of erroneous deprivation." Selvin Adonay E.M. v. Noem, 817 F. Supp. 3d 720, 734 (D. Minn. 2025) (citing Mathews, 424 U.S. at 335). "When a noncitizen was previously released, which in and of itself reflects a determination that the individual is neither a flight risk nor a danger to the community, there is 'a very high risk of erroneous deprivation of liberty' absent an individualized custody

determination." Rodriguez Brizuela v. Noem, No. 5:26-CV-0279-JKP, 2026 WL 752257, at *6 (W.D. Tex. Mar. 12, 2026) (citation omitted).

Further, as the court in Jesus Alejandro G. A. v. Blanche noted, detention during removal proceedings is "'constitutionally permissible'" but "the government's authority to detain noncitizens is not limitless and should advance two regulatory goals: (1) ensuring the appearance of noncitizens at their immigration proceedings; and (2) preventing danger to the community while those proceedings are ongoing." No. 26-CV-1932 (LMP/ECW), 2026 WL 1383138, at *11 (D. Minn. May 18, 2026) (citing Demore, 538 U.S. at 531; Zadvydas, 533 U.S. at 690)). A bond hearing before an IJ where both parties have an opportunity to be heard allows an IJ to determine whether a petitioner's detention is necessary to advance these goals.

Respondents argue that there is not a "substantial risk Petitioner will be erroneously deprived of his rights" because removal proceedings, themselves, will give Petitioner "every opportunity to make a case why he should be permitted to remain in the United States." (Doc. 6 at 19.) Respondents do not address whether detention is necessary to ensure Petitioner's appearance at his immigration proceedings or to prevent danger to the community. In fact, a

theme of Respondents' brief is that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and therefore an evaluation of whether he is a flight risk or dangerous is "irrelevant." (Id. at 6-7.)

On the other hand, Petitioner asserts that he will continue to be deprived of his liberty interest if the current procedure–"en masse detentions of immigrants for the sake of detentions" continues to be followed here with no individual assessment. (Pet. ¶ 70 (citing Pedro A.D.L.O.O., 2026 WL 948970, at *3).) He argues that requiring Respondents to consider alternative procedures (i.e., individualized inquires into the necessity of detention) rather than a policy of "detain first, justify later" is reasonable to protect "individual rights and liberty as well as preserve government resources." (Id. ¶ 71 (citing Gunaydin v. Trump, 784 F. Supp. 3d 1175, 1188 (D. Minn. 2025)).)

The Court again disagrees with Respondents' myopic focus on § 1225(b)(2)(A) detention. If the Court were to adopt Respondents' arguments, no noncitizen would ever be released pending a final decision on their petition, which constitutes no due process and certainly no individual assessment of their individual circumstances. This does not fulfill the promise of Zadvydas that

every person in this country is entitled to due process of law. 533 U.S. at 693; see also Pedro A.D.L.O.O., 2026 WL 948970 at *3.

Petitioner is entitled to an individual assessment of whether detention is necessary to ensure his appearance at future immigration proceedings and to protect the public. Despite his recent arrest, the state court released Petitioner on bond pending resolution of his charges. Charges are not convictions. The Court therefore finds the second Mathews factor weighs in favor of Petitioner.

**c. The Third Mathews factor**

The third Mathews factor requires the Court to consider the government's interest "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335. Respondents argue that they have "strong historical and practical interests in seeing Congress's will given effect." (Doc. 6 at 19.) They state that continued detention of Petitioner promotes "the plenary power of Congress and the Executive Branch over immigration," which includes the "elemental" power to detain during deportation proceedings. (Id. (citing Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 210 (1953)).)

Respondents assert that their interest is "particularly strong" in this case where Petitioner has been arrested and detained on "serious felony charges." (Id. at 20.)

As discussed, no opportunity to be heard equals no due process. While the Court acknowledges that the government has a substantial interest in protecting the public (if, indeed, that is what Respondents argue when they mention "serious felony charges"), especially in a case such as this where a petitioner's record is not blemish-free, such "interest[] [is] not subverted by requiring the minimal procedural safeguard of a bond hearing." Manuel G., 2026 WL 1256358, at *5.

Instead, granting Petitioner a bond hearing – which is hardly an "administrative burden"– will give both parties an opportunity to adequately present arguments on the dangerousness and flight risks posed by Petitioner's specific circumstances. This due process safeguard will reduce the risk of erroneous deprivation of Petitioner's rights without imposing significant burdens on the Government.

**E. Remedy**

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews, 424 U.S. at

333 (quotation omitted). All the Mathews factors weigh in favor of Petitioner. Therefore, the Court concludes that even if mandatory detention pursuant to § 1225(b)(2)(A) applies to Petitioner, his detention violates his constitutional right to procedural due process. The appropriate remedy for this constitutional deprivation is to provide him with an opportunity to be heard.

Although Petitioner first argues for immediate release and for a bond hearing only in the alternative, the Court finds Petitioner's comparison to Eliezer B.S. v. Berg, Civil No. 26-3020 (MJD/DTS) inapt. In Elizer B.S., this Court had ordered a bond hearing for the petitioner. While the immigration judge held the hearing, she found that she did not have jurisdiction to decide the bond issue because "the immigration court lacks jurisdiction under Matter of Yajure-Hurtado, 29 I. & N. Dec. 216 (B.I.A. 2025)," but simultaneously issued alternative findings that the petitioner "did not pose a danger to the public, and that 'the Court would set a bond of $10,000 BUT FOR the lack of jurisdiction.'" Eliezer B.S., Civil No. 26-3020, Docket No. 30 (slip op.) at 3-4 (emphasis in original).

This Court found that the petitioner did not receive the bond hearing he was entitled to under the Court's order and that the IJ's alternative finding of a $10,000 bond for someone who did not pose a danger to the community was

"illusory," and ordered the petitioner's immediate release. (Id. at 4-5 (citing David J.C.P. v. Blanche, Civil No. 26-2181 (DWF/ECW), Docket No. 19 (D. Minn. May 14, 2026)).) Thus, the IJ in Eliezer B.S. made at least some attempt at an individualized inquiry into the need for detention, albeit "illusory." Here, the IJ made no such attempt. Under these circumstances, the Court finds that a bond hearing is the proper way to secure Petitioner's due process rights.

Because the Court finds that Petitioner's current detention without a bond hearing violates his Fifth Amendment due process protections, the Court need not consider Petitioner's alternative arguments. See Faysal N. v. Noem, No. 25-CV-04641 (JMB/DLM), 2026 WL 36066, at *3 n.3 (D. Minn. Jan. 6, 2026) (stating that when the court's decision on one of the petitioner's asserted theories for relief meant that the petitioner's detention was unlawful, the court did not need to reach the petitioner's alternative arguments).

## III. ORDER

Based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Petitioner's Petition for Writ of Habeas Corpus **[Doc. 1]** is **GRANTED in part** as follows:

1. Petitioner's detention without an individualized bond hearing violates his rights under the Due Process Clause of the Fifth Amendment;

2. Respondents are ordered to provide Petitioner with a bond hearing within one week after the issuance of this Order;

3. Respondents are ordered to file notice of such bond hearing directly with the Court within two (2) hours of its scheduling[3];

4. The Immigration Judge is prohibited from denying the opportunity for a bond hearing based on a purported lack of jurisdiction;

5. If a bond hearing takes place that results in Petitioner's release, Respondents are ordered to:

    i. Release Petitioner into Minnesota;

    ii. At a safe time and place communicated at least two (2) hours in advance to Petitioner's counsel; and

    iii. With all of Petitioner's personal effects in Respondents' possession, such as Petitioner's driver's license, immigration papers, passport, cell phone, keys;

6. If a bond hearing does not take place within one week, Respondents are ordered to immediately release Petitioner from custody into Minnesota with the same conditions of release described in ¶ 5;

7. Within 48 hours of the conclusion of the bond hearing or Respondents' decision to release Petitioner from custody, Respondents must file a status report with the Court detailing the results of the Bond Hearing or its actions related to release; and

---

[3] The purpose of this is to provide timely notice to Petitioner's counsel so that counsel can prepare for the bond hearing and/or find an immigration law attorney to represent Petitioner at the hearing.

8. Any motion for attorney fees and costs pursuant to the Equal Access to Justice Act must be filed within 21 days of entry of judgment in this matter, along with a well-reasoned memorandum of authorities explaining why an award of fees and costs is warranted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 3, 2026

s/Michael J. Davis
Michael J. Davis
United States District Court